Can the attorneys at Cordell Perry please approach the podium and verify yourselves for the record? Good morning, your honors. My name is Elena Penick for Cordell Perry. Assistant State's Attorney Annette Collins for the people of the state of Illinois. Ms. Penick, did you want to reserve any time for rebuttal? You have 15 minutes for your argument. Yes, three minutes, please. All right, Ms. Penick, you can start. May it please the court, counsel. The instant post-conviction appeal presents rather an unusual situation. In 2013, Mr. Perry filed a successive post-conviction petition claiming actual innocence in the 2005 shooting death of Denzel Calhoun. The petition was accompanied by a document purporting to be a signed and notarized affidavit from Latavia Hayden, the decedent's girlfriend and the state's key witness at trial. According to the document, Hayden recanted her trial testimony identifying Perry as Calhoun's shooter and explained that the police and prosecution had pressured her to testify against him. The circuit court docketed the petition for second stage proceedings within 90 days and appointed counsel to represent Perry on his petition. And instead of moving to dismiss, the state actually answered the petition by disputing the factual allegations in it and conceded that an evidentiary hearing was required. Now, significantly, the state also tendered a new videotaped interview of Hayden in which she denied having signed or seen the affidavit that was attached to the pro se petition. At that point, defense counsel took the unusual step of moving to withdraw Hayden's affidavit from the court's consideration and this happened over her client's objection and essentially rolling over on the state's oral motion to dismiss. Ms. Penick, is that videotaped interview in the record? Yes. All right. Although the court didn't immediately rule on the state's motion, it did allow the affidavit to be withdrawn and subsequently granted the state's motion without Perry ever having had the opportunity to defend his original filing. So the result was a second stage dismissal that did not comport with basic notions of procedural due process or the procedure to which Perry was entitled under the Post-Conviction Hearing Act. The whole point of a third stage evidentiary hearing under the Post-Conviction Act is for the trial court as fact finder to determine whether the petitioner's factual allegations are credible. Here, PC counsel's actions short-circuited that procedure and essentially decided for the court that her client's claims were not worth his attention. Did these things happen in the trial court before the court may have had benefit of the out-of-district cases, Elkin and Shortridge? Let me see. No, I think actually. Elkin is 2014. Yeah, Shortridge is 2012. And I think this was 2014, middle of the year when. It does take a while, though, for some of these things to trickle down. Yes. But it does seem like the court wasn't aware that it had some obligation to protect Perry's interests under the circumstances because although counsel does have a professional obligation not to advance claims she believes to be wholly frivolous, that's not the end of the analysis. No, but the court really didn't have the benefit of either lawyer providing it with any suggestion of a greer situation, did it? It did not. And it didn't really have either party telling it that Shortridge is out there, Judge. Right? That's correct. And, in fact, the court said he really hadn't had a situation like this before occur. Yeah, and you can certainly understand how. So you're not really claiming the court is in error, you're claiming that the lawyer is in error. Well, I think the lawyer certainly takes the brunt of the weight of the error here. I think where the judge may have misstepped is as soon as appointed counsel alerted the court that this was happening over her client's objection, he might have recognized that this would be a good time to bring Mr. Perry to court. So what should the lawyer have done? What should the lawyer have done? Well, the lawyer should have moved to withdraw, ideally. Or, you know, we don't actually know what, you know, we don't know whether the affidavit's credible or not. We don't even know the extent of the lawyer's investigation. Even if it's not, and even if the lawyer found a false affidavit and something that shouldn't be before the court, it's not the lawyer's job to play God here, is it? Absolutely not. So, you know, since we're talking about claims that were already found non-frivolous on their face by the trial court, the Illinois Supreme Court in Cooner requires counsel to defend her conclusion to the contrary in a detailed motion to withdraw. There was no motion to withdraw in this case, just the gutting of Perry's petition, essentially, which is really tantamount to in Shortridge when, you know, the attorney confessed the state's motion. So, second of all, even if counsel does move to withdraw, the court has an obligation under cases such as Elkin and Jackson to give Mr. Perry a chance to rebut counsel's conclusions and defend his claims. That never happened here. In fact, Perry wasn't even present on the dates that counsel withdrew Hayden's affidavit, and the court dismissed his petition even though, as I said, the attorney had given notice that the removal of the affidavit was occurring over her client's objection. How would you distinguish the two cases the state cites, Malone and Rivera? Rivera, yeah. Rivera. Well, to the extent that the state is arguing that Rivera and Malone say that counsel is not required to withdraw, I would submit that those cases are pretty easily distinguished since neither involved any affirmative damage to the petitioner's claims. You know, here we have the entirety of his petition is built upon this affidavit, which counsel removes and, in fact, replaces with a pretty worthless statement of personal innocence. Also, in Malone, the defendant actually had a chance to address the court and defend his claims. That was present, actually, wasn't he? That's correct. And there was an active exchange with the court about what was happening. And that didn't happen here. Really, you know, counsel not only affirmatively damaged his petition by withdrawing the support, but also did so without providing him the procedural safeguards that would accompany a motion to withdraw. So as a result, the court's decision to dismiss the petition on the state's motion is really flawed because Mr. Perry didn't have the benefit of counsel truly in reaching that stage of the proceeding, nor did he have a chance to defend himself, per se. So for these reasons, we would ask that you reverse and remand for new second-stage proceedings. Thank you, Ms. Plunkett. Thank you. Ms. Collins. Good morning, Your Honors. Assistant State's Attorney Annette Collins again for the people. The attorney in this case didn't do anything wrong at any juncture in this proceeding. The first thing that she did was she withdrew an affidavit that she knew to be demonstrably false. Okay. How do we know that? We know that from the record here. We know that, first of all, the state … Are your comments really very vague? They are, and I will explain why. And even if it's false, okay, even if what you say is true, why is the lawyer – why isn't she obligated to take the action that the case law says? You either withdraw it and you tell the court why you're withdrawing, because this is a fraudulent affidavit, or you stand on the petition. Okay. I think those two questions have to be viewed separately at first because they do involve different analyses. It is an unusual circumstance. We have an attorney who, through her own investigation, discovers that the affidavit that's attached to a pro se petition actually was never sworn to and attested by the purported affiant. Did she make a proper record of that? Yes, she did. How? She said that she took the state's evidence and engaged in her own investigation. That's all she said? Yes, and that's all she can say because … What does that tell us? Well, she also said that as an officer of the court, she had to withdraw the affidavit. What does that tell us? Well, this court is well aware of Rule 3.3 of the Rules of Professional Conduct. That rule is as clear as can be. It states that no lawyer, a lawyer shall never present false evidence to the court. So we accept all this. So what is she supposed to do now? She is supposed to withdraw that affidavit. No, she's actually supposed to withdraw from the case and explain to the judge why this petition is frivolous and without merit. No, as a matter of fact, she's not. If we take a look at Greer, the progenitor of this whole issue, Greer tells us that an attorney need not withdraw. Now, remember, that case was about an attorney being able to withdraw, not required to withdraw. But there's language in Greer that is very pertinent to the instant case. And in Greer, the Supreme Court said, and it cautioned lawyers, it actually used the language, we hasten to emphasize that the inability of post-conviction counsel to properly substantiate a defendant's claim is not the standard by which a counsel should judge the viability of those post-conviction claims. In other words, an attorney, simply because they can't substantiate the claims in the post-conviction petition, should not withdraw simply because of that. So what is the standard then? What do they have to have in order to withdraw? That's a matter of choice. This Court has said multiple times, as has the Malone case. How can it be a matter of choice when you're suggesting that this lawyer did her own investigation? Which she's required to do under Section 51C. And then apparently, because it's really not clear, apparently there's a suggestion that this affidavit was fraudulent. This lawyer also indicated that she had spoken with the defendant on numerous occasions. And while the defendant did not agree with her decision to withdraw that affidavit, there's indications in this record that obviously she had conversations with him. Those conversations, again, implicitly led her to withdraw this affidavit. His disagreement with that action is, frankly, immaterial. Because no litigant, no client, can tell a lawyer to commit an ethical violation. And in fact, the U.S. Supreme Court itself, more than 30 years ago, when Nix v. Whiteside, and the Illinois Supreme Court, has said emphatically that a lawyer's decision not to present perjured testimony can never be the basis of ineffective assistance of counsel. It should be even less than that. In this record, where you have all sorts of vague insinuations, you're expecting us to say that everything is fine? Yes, I am. Because there's a rule, 651C certificate, that indicates that this counsel did everything in her power to make the petition what it needed to be under that standard. Now, right here, I have to call you out on that one. Because what she did was substitute a worthless affidavit. That was all she could do. That says I'm actually innocent. So I don't know how you can say she did everything she could do. Although, under our client's concern, what she should have done was withdraw. Or she should have provided us with some kind of record that indicated what you're saying. She would not be capable of providing this court with a record if information was obtained during the attorney-client privileged conversations. So for that reason, she had to be perhaps obtuse and indicate to the court as an officer of the court she couldn't present that affidavit. To me, that is a clear indication that she's stating to the court that her ethical obligations under the rules of professional conduct prevent her from presenting that affidavit. Isn't she playing God here? No, as a matter of fact, she's not. This is not the same kind of situation that we typically see. You used Greer as a reference. The lawyer was allowed, the post-conviction lawyer, to withdraw from Greer. Was allowed to, absolutely. That is a choice that a post-conviction attorney has to make. But a post-conviction attorney... And shouldn't it have been done here? No. As a matter of fact, not that it should have been done. Because that's the question we're asking. We're not talking about whether or not the decision that she made itself was appropriate, because it is appropriate. What we are talking about, what defendant is trying to say is... So we don't know that it's appropriate. ...that a lawyer is involved to withdraw under certain circumstances. We don't know that it's appropriate. See, there's not a record enough for us to know that it's appropriate. So the proper thing to do would seem to be to withdraw. Absolutely not. Case now tells us... Why should a lawyer, I don't care what side of defense they're on, state or defendant, if a defense attorney is presented with a videotape in which a witness clearly indicates that an affidavit was fraudulent, don't you think that person has a duty as an officer of the court to advise the trial court that I reviewed this affidavit, Judge, and there's every indication here that this affidavit that's been submitted was fraudulent. What about those duties? I don't care whether they're the prosecutor or the defense attorney. Why should the defense attorney perpetuate a fraud? Well, the defense attorney didn't perpetuate a fraud in this case. That's why the attorney withdrew it. Remember, we have a pro se lineage. There's no indication. We don't know whether or not defendant knew it was a fraudulent affidavit. We don't know who obtained that affidavit for him. He's incarcerated. So we are not suggesting that defendant himself was perpetuating a fraud. What we are saying is that this attorney met her ethical obligation, because during her investigation, the natural course for 651C investigation, she discovered that a piece of evidence that was submitted to the court, now she's his attorney, so she is submitting it to the court and verifying it under 651C, that she couldn't do that under. . . It's all too vague. Everything is so vague. I talked to my supervisor. We decided I can't do this. I'm not really saying why. I mean, it's all too vague. And what about Shortridge? And what about Elkin? Shortridge and Elkin are cabined within the very unique circumstances in those cases. In fact, Elkin itself described its decision in Shortridge as examples of defense counsels unequivocally arguing against defendants' interests. We don't have that here. Aren't you saying that right now, that she had this ethical obligation not to supply the court with an affidavit that she believed was fraudulently obtained? So once she did that, what she did next is entirely consistent with Greer. She looked at the petition as it stood. She made her investigation to determine if there was any way to verify it. She could not substantiate the claim in any way other than via defendant's own affidavit. She did that. But as Greer explicitly states, the mere failure of the ability to substantiate a claim in a post-conviction petition is not enough to require withdrawal. It's not even enough to allow an attorney to make the decision to withdraw. But in that case, the lawyer did withdraw. So how could you use that as a comparison? Because in that case, the lawyer asked to withdraw based on that lawyer's statement that the petition was frivolous and patently without merit. We don't have that same explicit statement here. No, we don't, because everything is too vague. But let me ask you this. Shortridge and Elkin say there's two options. Either you withdraw and you explain to the court why you're withdrawing. I, as an officer of the court, believe there are no issues of merit. The petition is frivolous and without merit. And these are the reasons, Judge. And therefore, I'm asking to withdraw as attorney for this petitioner. And the other option is that you stand on the petition. And she couldn't do that because for these sort of vague suggestions, she couldn't do it because it was fraudulently obtained. So I think her options are one or the other. And her option here was based on the suggestion that this was a fraudulently obtained affidavit, that she withdraw. Instead, she substitutes an affidavit that she knows as an officer of the court. Her own, I don't know, maybe she got it from him, but I don't think so. She substitutes her own affidavit, which she knows as a lawyer, cannot survive a dismissal. I totally disagree, Your Honor, because I view what happened here as the unique circumstance where we have to have, and I think this is a circumstance that CUNA itself, the Illinois Supreme Court, recognized that occasionally post-conviction counsels are going to be confronted with ethical questions. That does not necessarily mean that they are required to withdraw. This ethical question occurred early on and required this counsel under her duties of rules of professional conduct to withdraw a piece of false evidence. She cannot be held to be providing unreasonable assistance for choosing not to present basically what amounts to as perjured testimony. And then she should at least put that on record. We don't have that here. We have all sorts of vague insinuations about I talked to my supervisor and we don't want this coming back on an ineffective assistance claim. I don't know what that means. Well, that might have been, that was early on during the discussions about having it go to third stage with a false affidavit. For instance, and I'll just give an example of perhaps what counsel was thinking about. Go all the way to third stage. The witness takes the stand, disavows making that affidavit, and all of a sudden the judge is confronted with the information that defense counsel knew that this affidavit was false and kept it before the judge. Under those circumstances, that's a violation of the rules of professional conduct. That could give rise to ineffectiveness if she didn't withdraw it. So she's in an ethical quandary. So perhaps she was talking about ineffective assistance or unreasonable assistance in that context. That was very early on during this pending post-conviction proceedings. After she withdrew the invalid fraudulent affidavit, as she was required, she had no choice in the matter, she was required to do that. After she did that, she still had the remaining choice. Try to make the defendant's petition survive, which was virtually impossible in this case, but that itself does not require withdrawal under Greer. Do you think a lawyer should withdraw from a case as an officer of the court when they become aware that their client has given them and is asking them to file what would be a false affidavit with the court? That example is actually contemplated in the rules itself. And I believe there's comments in the rules that say that an attorney may withdraw, but it's not required, may withdraw or may ask to withdraw, but need not withdraw if their client asks them to do something unethical. If their client demands that they do something unethical, then we get into a different degree. But the rules themselves recognize that occasionally clients are going to ask their attorneys to do something that maybe the client is unaware of the ethical obligations. Does this court have any obligation at all to just look the other way in this case? Should we ignore everything because you're saying the lawyer doesn't have any obligation to do something? Should we ignore the insinuations and the suggestion that there's been an affidavit that was fraudulently prepared? And isn't that what we're going to do if we simply affirm? No, absolutely not. That is not the message. But you used the term false affidavit in this courtroom today. Should we ignore that? Should we ignore that the state's attorney said there was a false affidavit prepared and we just simply affirm this decision? Absolutely not. Isn't there something wrong with false affidavits being filed? Absolutely. And doesn't this court have an obligation to go further and do something about this instead of ignoring it and say she didn't have to withdraw? Forget about the insinuation and the record suggesting a fraudulent affidavit was filed. I am not suggesting that this court not take that seriously. What I'm suggesting to you. Say it's okay, she didn't have to withdraw. What should we do? This is what the court should do. This court should recognize that attorneys in the post-conviction proceedings occasionally encounter situations like this. They meet their ethical obligations and then pursuant to Greer, and by the way, neither Elkin nor Shortridge dealt with this kind of circumstance. It's very unusual. It is unusual. But Greer itself has language in it that covers this scenario, as does Cuner, because Cuner, the Illinois Supreme Court case that expanded on Greer, also recognizes that. Was there an issue of a false affidavit in Greer or Cuner? No. Cuner? No, neither of those two. This case is unusual. It is very unusual, Your Honor, but. I don't think that the direction that you're suggesting we go really is valid and that we should just simply ignore the suggestion of a false affidavit. I don't see that. Justice McBride, the attorney below has her own ethical obligations to keep attorney-client confidences as well. We don't know that the silence in this record is not due to that. What I'm urging this court not to do is jump to the conclusion that this attorney below did anything improper because according to the case law, not just Shortridge and Elkin, but Greer itself, Cuner, and a U.S. Supreme Court, Illinois Supreme Court case law that without a doubt indicates that an attorney who chooses to follow their ethical obligations cannot be deemed either ineffective or unreasonable. What I would suggest to Your Honor is if we take the defendant's suggested course in this matter and call this defense counsel unreasonable, to have provided unreasonable assistance. In other words, she should have withdrawn. By not withdrawing, she's provided unreasonable assistance. We are suggesting that an attorney who meets her ethical obligations is somehow committing improprieties. And that would be far more troubling if that were the result, and that ultimately would be the result because we have a, we know for certain, based on this record and based on, albeit implied, inferences that this is not a valid affidavit. So to send it back for appointment for another counsel to take a look at this, or a succession of counsels to take a look at this ad nauseum until we find one that perhaps will present this fraudulent affidavit despite the ethical obligations, that's untenable as well. And there's no indication in this record that defendant who had continued communications with his attorney ever wanted to proceed pro se. This is not a situation like the Jackson case or the Elkin and Shortridge cases where the defendants themselves were saying, I want to represent myself. I want to do something. I want to put this forward. I don't think those cases are bottom-down in the defendant wanting to proceed pro se. I think that the essence of what they're saying is that the petitioner should have the right to go forward either with an attorney or on their own. And that's really all that those cases are. Elkin made a big point about notice and how the defendant didn't have notice that this was what his attorney was going to do. That was, according to Elkin, the fulcrum of that case. So when we take a look at what happened here, the attorney advised the defendant what she wanted to do. He did not agree with it, but he does not get to make the ethical decisions insofar as what the rules of professional conduct are and how the attorney can or cannot behave according to those rules. We have a case that involves an attorney left with no support for the affidavit. That was not within her control. Well, again, that's part of the problem with the case. The record is really insufficient. There's many suggestions or thoughts or insinuations, but it's not particularly clear. We have lawyers saying things that are very vague. Agreed without a record. We're left without a sufficient record to make some of the conclusions that you're giving us, that she had an ethical obligation to whatever. You're telling us things that we really can't define or to bind from the record. But I would like to comment, you know, your arguments are very good arguments. And, you know, it really makes us think about that issue. All right. I'm going to make one little comment because I want to put this case in very stark contrast to the typical scenario because I know that counsel is going to present to this Court an issue of fact-finding, that somehow this lawyer was playing God and engaging in fact-finding. And I would suggest this is not that typical scenario. This is not a situation where we know a witness has maybe executed a different affidavit or has said multiple stories at different times. And the witness has admitted that and now claims one version over the others. That's an issue of fact. That's a witness who said different things at different times. This is a witness who, based on this record, scant though it may be, didn't prepare that affidavit. So we don't have competing versions. For all we know, and this is all that the attorney has, there's unrebutted proof that this is not the witness's affidavit. Because of that, there's no choice. It has to be withdrawn. And then we get into Greer territory where the next choice is, what is that attorney supposed to do? And the attorney has two choices. They did, she did, the best that she could. Well, under those other cases, you don't switch affidavits. You stand on a petition. Right. I understand that. So what I'm doing is I'm saying that an unusual situation that fits squarely within the case law, and I want to absolutely emphasize before I sit down, that an attorney who meets her ethical obligations should never be deemed ineffective or unreasonable. And because meeting her ethical obligations in this case served as the foundation for the later proceedings, calling her unreasonable because of what she did after that, wrongly, wrongly castigates her as not meeting her obligations when what she was doing all along was following assiduously the rules of professional conduct. For those reasons, Your Honor, and those in our brief, we would ask that this Court affirm. Thank you. Thank you. Ms. Penick. Just a couple quick points. First of all, I think it's pretty outrageous that counsel characterized the record as containing unrebutted proof that Hayden didn't prepare the affidavit. We don't know. I mean, as Your Honor noted, the extent of counsel's investigations is completely unknown. And the whole point of an evidentiary hearing is to decide what's real and what's not. Anything short of that, and we have to take whatever factual allegations are on the table as true. And as far as the pro se filing, the only allegation was that Hayden had recanted. Also, counsel talked a lot about the sanctity of the rule, you know, the duty of counsel not to present something frivolous. We're overlooking, though, that the duty to withdraw from certain proceedings is not just in this case law, although it certainly is, but it's also in the rules of professional conduct. 1.16 creates a duty to withdraw when the representation would result in a violation of the rules. So that duty to withdraw, as you can see from the cases, has two purposes, both to protect the attorney and also to protect the client under the circumstances,  And finally, as far as the sanctity of that duty not to present frivolous claims, she did, in fact, present a frivolous claim in its place. So she took away something that facially had potential and substituted a bald allegation of innocence, which was going nowhere. So the course she chose wasn't really right under any sense of her duties here. So we would just ask that you remand for new second-stage proceedings at which Mr. Perry gets his day in court. And as the State had conceded, an evidentiary hearing is the only way to sort out these conflicting pieces of evidence. Thank you, Ms. Pelley. Thank you. We'll take matter under advisement and issue an order as soon as possible. Thank you.